| | |
|---|---|
| DISTRICT COURT, LARIMER COUNTY, STATE OF COLORADO<br>8th Judicial District<br>201 La Porte Avenue, Suite 100<br>Fort Collins, Colorado 80521 | DATE FILED: November 11, 2021 9:00 PM<br>FILING ID: E3CCD3E1A916B<br>CASE NUMBER: 2021CV30828 |
| **JANEAU RITTER**, a disabled individual and citizen of Colorado, by and through her Conservator and Guardian, **SEAN MCKENDRICK**,<br>Plaintiffs,<br><br>v.<br><br>**BNSF RAILWAY COMPANY**, a Delaware corporation, **BURLINGTON NORTHERN SANTA FE, LLC**, a Delaware limited liability company,<br>**BNSF LOGISTICS, LLC**, a Delaware limited liability company,<br>**BURLINGTON NORTHERN SANTA FE PROPERTIES, L.L.C.**, a Delaware limited liability company,<br>**BURLINGTON NORTHERN SANTA FE CORPORATION**, a Delaware corporation,<br>**TRANSPORTATION GROUP MANAGEMENT, INC.**, a Delaware corporation,<br>**LOUIE P. RAMIREZ**, an individual and citizen of Nebraska, and **STEVEN A. WALD**, an individual and a citizen of Colorado,<br>Defendants. | **COURT USE ONLY** |
| Attorneys for Plaintiffs:<br>J. Todd Tenge (No. 22088)<br>Tenge Law Firm, LLC<br>2120 Milestone Drive, Suite 104<br>Fort Collins, CO 80525<br>Ph:  (970) 528-5173<br>Fax: (303) 665-8788<br>jttenge@tengelaw.com<br><br>Paul J. Komyatte (No. 22750)<br>David P. Mason (No. 41333)<br>The Komyatte Law Firm LLC<br>722 Washington Avenue, Suite 202<br>Golden, CO  80401<br>Ph:  720-975-8553<br>Fax:  720-528-8072<br>paul@komyattelawfirm.com<br>dave@komyattelawfirm.com | Case No.:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

COME NOW, the Plaintiffs, by and through their counsel, the Tenge Law Firm, LLC, and the Komyatte Law Firm LLC, and as their Complaint against the Defendants and each of them, state and allege as follows:

## INTRODUCTION

1.     This is a personal injury action arising out of the negligent and intentional acts and omissions of the Defendants in causing injuries to the Plaintiff, Janeau Ritter. The Defendants own, operate, maintain, and/or control railroad tracks and trains running over many parts of North America, including a line running down Mason Street parallel to College Avenue through the Old Town area of Fort Collins, Colorado. Plaintiff, Janeau Ritter, was severely injured by Defendants' train on November 15, 2019, as she was attempting to cross the railroad tracks on foot near the intersection of Mason Street and Mulberry Street in downtown Fort Collins. On that date, as Ms. Ritter was attempting to cross the tracks, the train owned and operated by Defendants on Defendants' tracks moved suddenly, unexpectedly, and without warning, causing her to be trapped underneath, run over, and severely and permanently injured. Plaintiff, Janeau Ritter, through her duly appointed conservator and guardian, Sean McKendrick, seeks damages for her injuries.

## PARTIES

2.     Plaintiff, Janeau Ritter, is a disabled individual and a citizen and resident of the State of Colorado, residing in Fort Collins, Larimer County, Colorado. She brings this action through her duly appointed conservator and guardian, Sean McKendrick.

3.     Plaintiff, Sean McKendrick, is a citizen and resident of the State of Colorado, residing in Fort Collins, Larimer County, Colorado, and is the duly appointed conservator and guardian of the disabled Plaintiff, Janeau Ritter.

4.     Plaintiff, Sean McKendrick, brings this action solely in his capacity as the duly

appointed conservator and guardian of Plaintiff, Janeau Ritter, and solely on behalf of the disabled Plaintiff, Janeau Ritter.

5.     Defendant BNSF Railway Company, which may also be known as "The Burlington Northern Santa Fe Railway Company," is believed to be a Delaware corporation headquartered and with its principal place of business located at 2650 Lou Menk Drive, Fort Worth, Texas 76131. Since 2010, BNSF Railway Company has been a wholly owned subsidiary of Berkshire Hathaway. It is primarily a railroad company, operating over 32,500 miles of track across 28 U.S. states, including Colorado, and 3 Canadian provinces, and employing approximately 35,225 employees, including many employees in Colorado. In 2020, BNSF Railway Company hauled 1.1 million carloads of agricultural commodities; 5.2 million intermodal shipments (truck trailers or containers) of consumer products; 3 million carloads of industrial products; and 1.4 million shipments of coal. The transportation of coal, in particular, accounted for thirteen (13) percent of BNSF Railway Company's freight revenues in 2020, or approximately $2.7 billion, with more than ninety (90) percent of its coal tons originating from the Powder River Basin of Wyoming and Montana. A significant percentage of BNSF Railway Company's Powder River Basin coal tonnage is believed to have been transported to end-users in Colorado; it is believed BNSF runs its empty coal cars from those Colorado end-users back to the Powder River Basin via the Company's track running through Old Town Fort Collins. BNSF Railway Company may be served with legal process through its registered agent in Colorado, C T Corporation System, located at 7700 E. Arapahoe Road, Suite 220, Centennial, Colorado 80112.

6.     Defendant Burlington Northern Santa Fe, LLC, is believed to be a Delaware limited liability company headquartered and with its principal place of business located at 2650 Lou Menk Drive, Fort Worth, Texas 76131. Since 2010, Burlington Northern Santa Fe, LLC has been a

wholly owned subsidiary of its sole member, Berkshire Hathaway, and was the surviving entity created through the merger of a Berkshire wholly owned subsidiary and the former Burlington Northern Santa Fe Corporation. Burlington Northern Santa Fe, LLC is a holding company that conducts no operating activities and owns no significant assets other than through its interests in its subsidiaries, including its principal operating subsidiary, BNSF Railway Company. Burlington Northern Santa Fe, LLC may be served with legal process through its registered agent, the Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

7.     Defendant BNSF Logistics, LLC is believed to be a Delaware limited liability company headquartered and with its principal place of business located at 2710 S. 48th Street, Springdale, Arkansas 72762. BNSF Logistics, LLC is believed to be a railroad engineering, design, and support services company, and is believed to have been involved with and provided services in conjunction with operation, maintenance, and control of the subject railroad track and/or train involved in the incident giving rise to this lawsuit. BNSF Logistics, LLC may be served with legal process through its registered agent in Colorado, C T Corporation System, located at 7700 E. Arapahoe Road, Suite 220, Centennial, Colorado 80112.

8.     Defendant Burlington Northern Santa Fe Properties, L.L.C., is believed to be a Delaware limited liability company headquartered and with its principal place of business located at 2650 Lou Menk Drive, Fort Worth, Texas 76131. It is believed that Defendant Burlington Northern Santa Fe Properties, L.L.C. may be served with legal process through its registered agent, the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. It is believed this defendant also was involved in the ownership and/or operation of the subject railroad track and/or train involved in the incident giving rise to this lawsuit.

9.     Defendant Burlington Northern Santa Fe Corporation is believed to be a Delaware

corporation headquartered and with its principal place of business located at 2650 Lou Menk Drive, Fort Worth, Texas 76131. It is believed that Defendant Burlington Northern Santa Fe Corporation may be served with legal process through its registered agent, the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. It is believed this defendant also was involved in the ownership and/or operation of the subject railroad track and/or train involved in the incident giving rise to this lawsuit.

10.    Defendant Transportation Group Management, Inc., is believed to be a Delaware corporation headquartered and with its principal place of business located at 2650 Lou Menk Drive, Fort Worth, Texas 76131. It is believed that Defendant Transportation Group Management, Inc. may be served with legal process through its registered agent, the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. It is believed this defendant also was involved in the ownership and/or operation of the subject railroad track and/or train involved in the incident giving rise to this lawsuit.

11.    Defendants BNSF Railway Company, Burlington Northern Santa Fe, LLC, BNSF Logistics, LLC, Burlington Northern Santa Fe Corporation, Burlington Northern Santa Fe Properties, L.L.C., and Transportation Group Management, Inc., may be collectively referred to herein as "BNSF" or "the BNSF Defendants."

12.    Defendant Louie P. Ramirez is believed to be a citizen and resident of the State of Nebraska, residing in Scottsbluff, Scotts Bluff County, Nebraska.

13.    Defendant Steven A. Wald is believed to be a citizen and resident of the State of Colorado, residing in Aurora, Arapahoe County, Colorado.

14.    Defendants Ramirez and Wald may be collectively referred to herein as the "Train Crew Defendants" or the "BNSF Crew Defendants."

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over this action pursuant to C.R.S. § 13-1-124(1)(a), (b), and (c).

16.    This Court has personal jurisdiction over the Defendants because the Defendants have transacted and continue to transact business in Colorado, because the Defendants have committed the tortious acts and omissions complained of herein in Colorado, and because the Defendants own, use, and possess real property in Colorado.

17.    Venue is proper in this Court pursuant to C.R.C.P. 98(c) because some or all the tortious conduct complained of herein occurred in Larimer County, Colorado.

## GENERAL ALLEGATIONS

### BNSF's Mason Street Track In Downtown Fort Collins

18.    BNSF owns a railroad track that runs in a north-south orientation, along Mason Street and parallel to College Avenue, through the Old Town neighborhood of Fort Collins before heading east along Vine Drive.

19.    BNSF's track runs in between the northbound and southbound lanes of Mason Street, with the northbound lanes located immediately to east of the track and the southbound lanes located immediately to west of the tracks.

20.    Sidewalks line both sides of Mason Street.

21.    Mason Street is a busy north-south artery bisected by numerous busy east-west arteries running through the Old Town neighborhood.

22.    Many offices, restaurants, retail and commercial businesses, residences, college buildings, and government buildings line Mason Street through the Old Town neighborhood.

 

 



*Clockwise from upper left: BNSF's Mason Street Track bisects Mason Street through Old Town Fort Collins; traffic backed up from College Avenue across the Mason Street track at Mulberry Street; traffic back up at Laporte Avenue; traffic waits for a train to pass at a crossing in Old Town Fort Collins; train cars on BNSF's Mason Street track, looking north towards the intersection with Laporte Avenue.*

23.   Old Town Fort Collins is a heavily trafficked area including the Mason Street corridor in particular.

24.   The Mason Street corridor, in particular, is heavily trafficked by vehicles and pedestrians on a daily basis.

25.   Numerous east-west arteries bisect both Mason Street and BNSF's track on Mason Street through this part of Fort Collins.

26.   These east-west arteries crossing Mason Street, including but not limited to Mulberry Street, are heavily trafficked by vehicles and pedestrians on a daily basis.

27.   Residents of Fort Collins depend on free access, ingress, and egress onto and across BNSF's Mason Street track each and every day, simply to accomplish ordinary activities and tasks of daily living and to travel freely through the Old Town area and surrounding residential areas, and to freely cross from the east side of town to the west side of town and vice versa.

28.   BNSF is aware of the need for residents and pedestrians in Fort Collins, including the Old Town area, to frequently enter and cross its Mason Street track simply as a part of daily life in that area.

29.   For years, BNSF has acquiesced in and effectively invited the use of its Mason Street track by residents and pedestrians throughout Old Town Fort Collins, including entry onto and crossing of the track at and in between designated grade crossings on a daily basis.

30.   Upon information and belief, BNSF has done so because inviting the public to routinely enter onto and cross its Mason Street track both at and in between grade crossings as a means of traveling through the Old Town neighborhood area costs less money than erecting barriers or fencing to block pedestrian access, posting signage or personnel to prevent or deter pedestrian access, or providing pedestrian tunnels, footbridges, or other means for pedestrian to

cross Mason Street without the need to enter onto and cross BNSF's Mason Street track.

31.     Upon information and belief, BNSF has done so in order to maximize its profitability by minimizing costs that it might otherwise incur in undertaking measures to prevent pedestrians from entering and crossing its Mason Street track in between designated grade crossings, including but not limited to costs associated with erecting barriers and fencing, posting additional signage and/or personnel, and/or constructing alternate locations for pedestrians to safely cross the tracks, such as pedestrian tunnels and footbridges.

## BNSF's Use of "Mega Trains" on Its Mason Street Track

32.     Historically, BNSF has run eight to ten trains on its Mason Street track through Old Town Fort Collins per day, typically up to one mile long (roughly 100 cars).

33.     In recent years, stoppages of BNSF's trains on its Mason Street track have regularly resulted in significant blockages at grade crossings and associated congestion of major east-west arteries and delays of automobile and pedestrian traffic.

34.     In approximately 2018, BNSF began running longer trains, referred to as "doubles" or "mega trains," on its Mason Street track through Fort Collins.

35.     Typically, these would be northbound trains carrying empty coal cars.

36.     BNSF's long trains, or "mega trains," are up to three miles long and simultaneously block numerous major east-west arteries for lengthy periods of time, including during BNSF's practice of frequently stopping its trains on the Mason Street track for extended periods of time.

37.     Upon information and belief, BNSF uses these mega trains to cut expenses, boost profits, and improve returns for its investors.

38.     Upon information and belief, a single BNSF mega train has lower fuel, crew, and other operating costs than two regular-length trains.

**BNSF's Practice of Frequently Stopping Mega Trains on Its Mason Street Track
Regularly Creates Lengthy, Simultaneous Blockages of
Numerous East-West Arteries and Grade Crossings**

39.     BNSF frequently stops its mega trains for significant periods of time on its Mason Street track, including to wait for tracks to clear further north and for operations in the switching yard along Vine Street, northeast of Old Town Fort Collins.

40.     BNSF's practice of frequently stopping its mega trains for significant periods of time on its Mason Street track has created even longer blockages of grade crossings throughout the city than in past years, frequently lasting thirty minutes or more.

41.     BNSF's practice of frequently stopping its mega trains on its Mason Street track has regularly resulted in severe congestion and lengthy, simultaneous blockages of grade crossings at multiple major east-west arteries crossing Mason Street including Mulberry Street.

42.     Because BNSF does not publish its train schedules or provide schedule information to the public, pedestrians and residents of Fort Collins have no ability to predict when BNSF will run its mega trains through town or stop its mega trains so as to simultaneously block numerous east-west arteries crossing Mason Street for extended periods of time.

43.     Because BNSF does not publish its train schedules or provide schedule information to the public, pedestrians and residents of Fort Collins have no ability to schedule their travel or daily activities around BNSF's running and stopping of mega trains on its Mason Street track.

44.     BNSF's practice of running mega trains on its Mason Street track and of stopping its trains on a daily or near-daily basis, so as to cause lengthy, simultaneous blockages of numerous east-west arteries crossing Mason Street, has massively inconvenienced and affected the ability of residents of Fort Collins to travel across the city on a daily basis for years.

45.     BNSF's practice of running mega trains on its Mason Street track and causing

lengthy, extended blockages of major east-west arteries exponentially increased throughout 2019, from an average of only 1 long train per month in January 2019 to an average of more than 1 per day in December 2019.

### Safety Hazards Created by BNSF's Practice of Frequently Stopping Its Mega Trains on Its Mason Street Track

46.   BNSF has been aware of the hazards and dangers created by operations on its Mason Street track for pedestrians and members of the public for many years.

47.   BNSF has been aware that pedestrians are frequently present in close proximity to its Mason Street track by virtue of the track's location immediately adjacent to the sidewalks lining Mason Street.

48.   BNSF has been aware of multiple incidents in recent years where pedestrians suffered serious injuries or death as a result of being struck by BNSF's trains on its Mason Street track.

49.   For example, on June 27, 2016, a northbound BNSF train struck and killed a pedestrian on BNSF's Mason Street track, near the location of the November, 2019 incident in which Ms. Ritter was seriously injured.

50.   For example, on January 24, 2019, a northbound BNSF train struck and seriously injured a pedestrian on BNSF's Mason Street track near the Mountain Avenue crossing, approximately four blocks north of the location of the November, 2019 incident in which Ms. Ritter was seriously injured.

51.   For example, on February 7, 2019, a northbound BNSF train struck and killed a pedestrian on BNSF's Mason Street track nearly the Mulberry Street crossing, at roughly the same location as the November, 2019 incident in which Ms. Ritter was seriously injured.

52.   Upon information and belief, each of the above incidents resulted in lengthy

stoppages of BNSF's trains on its tracks through the Old Town area, resulting in lengthy obstructions of the east-west motor arteries and crossings on Mason Street and BNSF's Mason Street track.

53.     Upon information and belief, pedestrians began to cross BNSF's Mason Street track during each of these lengthy stoppages by climbing through, over, and under BNSF's stopped trains.

### BNSF's Actual Knowledge of Pedestrians Climbing Through, Over, and Under Its Stopped Trains on Its Mason Street Track

54.     BNSF has also been aware that pedestrians in Old Town Fort Collins regularly cross its Mason Street track during lengthy stoppages of its trains and mega trains on the track, and the associated lengthy, simultaneous blockages of all east-west arteries and grade crossings in the area, including near the Mulberry Street crossing, by climbing through, over, and under its stopped trains and mega trains.

55.     On or about September 21, 2019, a northbound BNSF train stopped on BNSF's Mason Street track for a lengthy period of time, near the location of the November, 2019 incident in which Ms. Ritter was seriously injured, blocking all east-west arteries and grade crossings in the area.

56.     During BNSF's lengthy train stoppage, numerous pedestrians crossed BNSF's Mason Street track by climbing through, over, and under its stopped train.

57.     Upon information and belief, BNSF and its personnel enlisted the assistance of local law enforcement in clearing people from the track so that the train could safely begin moving again.

58.     Upon information and belief, BNSF and its personnel were aware of the pedestrians crossing the tracks by climbing through, over, and under its stopped train and waited to begin

moving the train until after they could confirm that no pedestrians remained present on or near the train.





*Pedestrians reportedly crawling under and climbing through a BNSF train during a stoppage on the Mason Street track. BNSF has known for years that pedestrians commonly cross its trains in this fashion when it stops the trains on the Mason Street track for extended periods of time.*

59.  BNSF's practice of stopping trains and mega trains on its Mason Street track for extended periods of time so as to cause lengthy, simultaneous blockages of all major east-west arteries and grade crossings in the area without warning and with no public schedule has for years forced pedestrians and residents of Fort Collins to regularly cross BNSF's tracks by climbing through, over, and under BNSF's trains and long trains, simply to carry on their daily activities.

60.  At all relevant times, BNSF had actual knowledge that pedestrians and residents of Fort Collins were regularly climbing through, over, and under its trains and mega trains during its

lengthy stoppages of those trains and mega trains on its Mason Street track, simply to carry on their daily activities.

61.    BNSF's knowledge in this regard is believed to be reflected in meeting minutes, memoranda, train logs, dispatch logs, incident reports, computerized databases and files, and documents filed with, provided to, or received from governmental agencies by BNSF, including local, municipal, county, and state authorities in Fort Collins, Larimer County, and/or the State of Colorado and the Federal Railroad Administration ("FRA").

62.    Upon information and belief, at all relevant times, BNSF was aware of the dangers and hazards posed to pedestrians and members of the public by its practice of frequently stopping its trains and mega trains on its Mason Street track for extended periods of time, so as to block all east-west arteries and grade crossings in the area for extended periods of time, yet took no steps to prevent pedestrians from climbing through, over, and under its trains and mega trains, to warn pedestrians of the dangers created by its operations, or to provide alternate means for pedestrians to safely cross its tracks during such periods.

63.    City of Fort Collins personnel inquired with BNSF about its practice of stopping mega trains for lengthy periods of time on its Mason Street track in the summer of 2019 and were advised by BNSF that the railroad intended to continue this practice despite the significant impacts on pedestrian and automobile traffic, including severe congestion, lengthy blockages of grade crossings, and pedestrians regularly crossing the track by climbing through, over, and under BNSF's stopped trains and mega trains simply to carry on their daily activities.

### Plaintiff Janeau Ritter is Severely Injured After Being Struck by BNSF's Mega Train on Its Mason Street Track

64.    On November 15, 2019, at approximately 3:07 p.m., Plaintiff, Janeau Ritter, was severely injured after being struck by a mega train owned and operated by the BNSF Defendants

as she was attempting to cross the BNSF Defendants' Mason Street track.

65.     The injury occurred on the Mason Street track, which was owned and operated by the BNSF Defendants, near the intersection of North Mason Street and West Mulberry Street and adjacent to the Mason Street track's crossing with Mulberry Street in Fort Collins, Colorado.

66.     BNSF's railroad crossing with West Mulberry Street, identified by the United States Department of Transportation as USDOT #244635D, is located at or adjacent to railroad milepost #73.78 (the "Mulberry Street" crossing).

67.     The lead locomotive involved in injuring Ms. Ritter was BNSF #9278.

68.     The lead locomotive, along with at least five other locomotives, was pulling a mega train (hereinafter, the "subject Mega Train" or "Mega Train") that consisted of 237 empty coal cars.

69.     The subject Mega Train was heading to Cheyenne, Wyoming, going northerly out of Denver, Colorado.

70.     Defendant Louie P. Ramirez was the Engineer for the subject Mega Train.

71.     Defendant Steven A. Wald was the Conductor for the subject Mega Train.

72.     Upon information and belief, Defendants Ramirez and Wald were the only BNSF personnel assigned to and present on the subject Mega Train at the time.

73.     At all relevant times, Defendants Ramirez and Wald were responsible for safely operating, controlling, and overseeing the subject Mega Train, subject to the direction and control of the BNSF Defendants.

74.     At all relevant times, Defendants Ramirez and Wald were acting within the course and scope of their respective employment by the BNSF Defendants.

75.     The subject Mega Train was approximately 13,175 feet – two and a half miles – in

length.

76.     En route to Cheyenne, Wyoming, BNSF and the Train Crew Defendants stopped BNSF's two-and-a-half mile long Mega Train on the section of the Mason Street track in Old Town Fort Collins, including the Mulberry Street crossing, for an extended period of time.

77.     During the stoppage, the lead locomotive and head of the train was situated just west of North Lemay Avenue, approximately two miles north and east up the Mason Street track from the Mulberry Street crossing.

78.     During the stoppage, a full two and a half miles of the length of the train blocked the public streets of Fort Collins and the Old Town area for an extended period of time, including the intersections of Mason Street and Willow, Maple, Laporte, Mountain, Oak, Olive, Magnolia, Mulberry, Myrtle, and Laurel and the east-west grade level pedestrian crossings at, near, and in between those streets.

79.     After BNSF stopped its Mega Train so as to block all grade crossings and east-west arteries along a two-and-a-half-mile length of its Mason Street track, multiple pedestrians crossed its track by climbing through, over, and under BNSF's Mega Train.

80.     Ms. Ritter encountered BNSF's stopped Mega Train while on the west side of the Mason Street track, just south of Mulberry Street, as she was attempting to cross Mason Street from west to east.

81.     Ms. Ritter is believed to have encountered BNSF's stopped mega train at a location between two and two and a half miles south and west of the lead locomotive.

82.     BNSF's stopped Mega Train blocked Ms. Ritter's means of walking to her home, which was located on the east side of BNSF's Mason Street track.

83.     Ms. Ritter waited on the sidewalk on the west side of Mason Street for BNSF's

Mega Train to move.

84.  While waiting on the sidewalk, Ms. Ritter observed pedestrians crossing the Mason Street track by climbing over the coupling between the cars on its stopped Mega Train.

85.  After waiting and having not seen the train move, Ms. Ritter attempted to cross the Mason Street track to reach her home by climbing over the coupling between two cars on BNSF's stopped Mega Train, as she had seen numerous other pedestrians do while BNSF's Mega Train was stopped on the track on the date of the incident.

86.  This was exactly the fashion that BNSF knew pedestrians and residents in Fort Collins and the Old Town area had been regularly crossing its Mason Street track during BNSF's frequent stoppages of its trains and mega trains on that track for years prior to the date in question.

87.  Upon information and belief, BNSF and the Train Crew Defendants knew or had reason to know that pedestrians were crossing and attempting to cross its stopped Mega Train at that time and at that location by climbing through, over, and under the stopped train given the length of time the train was stopped, the pedestrian traffic in the area, and the frequent and historic practice of pedestrians crossing BNSF's stopped trains in this fashion at this location at such times.

88.  As Ms. Ritter attempted to cross the Mason Street track, BNSF's Mega Train suddenly, unexpectedly, and without warning began to move.

89.  Ms. Ritter fell from BNSF's Mega Train as it began to move.

90.  BNSF's Mega Train rolled over Ms. Ritter, severing her left leg and arm.

91.  BNSF's Mega Train continued to roll over Ms. Ritter as it passed along for approximately another 3,600 feet before continuing to move northward up the Mason Street track from Ms. Ritter's position.

92.  Upon information and belief, the Train Crew Defendants were contacted a short

time later by BNSF's dispatch and advised that something had gone very wrong and that a pedestrian had been struck and possibly killed by BNSF's Mega Train and to immediately stop the train, which had moved at least a half mile northward up the track after striking and injuring Ms. Ritter.

### BNSF's Failure to Take Appropriate Steps to Warn and Protect Against The Hazards of Its Stopped Mega Train on the Mason Street Track

93.    The Mulberry Street crossing is equipped with flashing lights and automatic gate arms to warn pedestrians and motorists of the presence of a moving train.

94.    It is unknown at this time whether the flashing lights and automatic gates were operating at the time of the incident.

95.    Upon information and belief, at the time of the incident, BNSF's Mega Train was not sounding a bell that was audible to pedestrians such as Ms. Ritter to warn that the train was going to move.

96.    Upon information and belief, at the time of the incident, BNSF's Mega Train did not sound its whistle or horn in such a manner as to be audible to pedestrians such as Ms. Ritter to signify to pedestrians such as Ms. Ritter that the train was going to move.

97.    At the time of the incident, there was no signage present at or near the Mulberry Street crossing to notify pedestrians such as Ms. Ritter that BNSF's stopped trains could begin to move suddenly and unexpectedly.

98.    Although BNSF did not post any signage notifying pedestrians of the danger prior to Ms. Ritter's injuries, it posted prominent warnings at the location of the incident at some time after her injuries.

99.    Upon information and belief, BNSF took no precautions to actually advise or warn Ms. Ritter and other pedestrians that its Mega Train was about to move prior to its movement.









*It is believed BNSF posted numerous prominent warnings at its Mason Street Track near the Mulberry Street Crossing after Janeau Ritter's catastrophic injuries, but no prominent warnings prior to the date of the incident. The photos to the left show some of the warnings posted at BNSF's Mason Street Track after the subject incident. The photos on the right show the same location on the date of the incident; no warning signs are visible.*

100.   Upon information and belief, at the time of the incident, there were no flagmen or other railroad personnel present at the Mulberry Street crossing to advise pedestrians such as Ms. Ritter that the train could or was going to move.

101.   BNSF, its agents, and its employees, including but not limited to the Train Crew Defendants, either did see or perceive or should have seen or perceived Ms. Ritter in such time to have prevented the train from running her over yet failed to take appropriate action to prevent the incident.

19

102.  BNSF has not constructed a pedestrian footbridge or provided other means for pedestrians to safely cross over its Mason Street track, specifically at or near the Mulberry Street crossing, when its trains and mega trains simultaneously block all or nearly all of the public streets, east-west pedestrian arteries, and grade crossings in the area for extended periods of time.

103.  Having to crawl under and climb over and through trains is a safety hazard that is well-known to BNSF and to its train crews working this section of track including but not limited to the Train Crew Defendants; and it is a daily occurrence for public pedestrians in Fort Collins, Colorado, especially those living near BNSF's Mason Street track, given the extended periods of time that BNSF's stopped trains and mega trains block the public crossings, yet Defendants have not taken adequate steps to enforce rules or to educate or warn members of the public of the danger, nor have Defendants taken any steps to eliminate the hazard of lengthy blocked crossings.

104.  Upon information and belief, citizens and city personnel in Fort Collins, Colorado contacted BNSF numerous times in 2019, and in preceding years, to report trains blocking the Mulberry Street crossing and nearby crossings in Fort Collins, Colorado.

105.  Upon information and belief, BNSF did nothing to alter its practice of stopping its trains and mega trains so as to block public crossings and east-west arteries crossing its Mason Street tracks.

106.  BNSF has voluntarily undertaken to provide a railroad police force.

107.  Upon information and belief, state and local agencies and/or community groups have made or caused to be made requests to BNSF for additional police staffing along its Mason Street track, including in the area of the subject incident, to address safety hazards created by BNSF's practice of stopping its trains and mega trains on its Mason Street tracks so as to simultaneously block all grade crossings and east-west arteries for extended periods of time.

108.   Upon information and belief, BNSF has failed to provide additional police staffing along its Mason Street track, including in the area of the subject incident, in response to such requests.

109.   Upon information and belief, BNSF has also failed to provide additional police staffing along its Mason Street track, including in the area of the subject incident, despite its actual knowledge of the safety hazards created by its practice of stopping its trains and mega trains on its tracks so as to simultaneously block all grade crossings and east-west arteries in the area for extended periods of time.

110.   Defendants are fully aware of the public concern for safety and other issues that arise from public street grade crossing blockages created by their trains including in Old Town Fort Collins, along its Mason Street track, and in the area of the subject incident in particular.

111.   Defendants have willfully disregarded those public safety concerns for years including, with respect to their regular operation and lengthy stoppages of mega trains, so they could cut operating costs, boost profits, and improve investor returns.

112.   Defendants have for years willfully disregarded the specific public safety concern they have created by inviting, permitting, and requiring pedestrians to cross their Mason Street track during lengthy train and mega train stoppages by climbing through, over, and under their stopped trains and mega trains.

113.   Some of the allegations herein have been made and/or may be perceived to have been made in the alternative. *Accord* C.R.C.P. 8(e)(2). Plaintiff will elect which claims and allegations she intends to pursue before the time of trial.

## COUNTS AGAINST THE BSNF DEFENDANTS

### COUNT I
### Negligence

114.   Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

115.   At all relevant times, the BNSF Defendants were in the business of operating and running trains and mega trains on their Mason Street track.

116.   At all relevant times, the BNSF Defendants owed a duty to exercise reasonable care in their operation and running of trains and mega trains on their Mason Street track.

117.   At all relevant times, the BNSF Defendants' duty in this regard extended to persons who crossed the Defendants' trains, mega trains, and tracks on foot, persons who were implicitly invited and/or granted permission to cross the Defendants' trains, mega trains, and tracks on foot, and persons who the Defendants knew or should have known were present on and around their trains, mega trains, and tracks, including by providing to the public and pedestrians appropriate warnings, protection, and a safe place to cross their tracks so as to avoid needlessly endangering members of the public, including Plaintiff.

118.   At all relevant times, the BNSF Defendants breached their duty and were negligent, including by the following:

   a.   Failing to construct a pedestrian foot bridge over their track (or other alternative means) to allow for the safe passage of pedestrians over their tracks;

   b.   Failing to properly warn of and address dangers to pedestrians of stopped trains and mega trains over crossings;

   c.   Failing to place a flagman or watchman at the Mason Street track, including the

Mulberry Street crossing, to warn and advise the public and pedestrians that their Mega Train was waiting for a track warrant, engaging in switching operations, and/or engaged in other operations up the track and would soon be moving;

d.  Failing to ensure the proper operation of the automatic flashing lights and gates on the Mason Street track including at the Mulberry Street crossing;

e.  Failing to place proper warning signage on the Mason Street track including at the Mulberry Street crossing to warn and advise the public and pedestrians that their Mega Train was waiting for a track warrant, engaged in switching operations, and/or engaged in other operations up the track as it operated over and blocked the east-west arteries on the Mason Street track including the Mulberry Street crossing;

f.  Failing to provide audible warning bells or a wayside horn at the crossing to alert pedestrians as to the danger of a moving train on the Mason Street track including at the Mulberry Street crossing;

g.  Failing to announce to pedestrians at the crossing such as Ms. Ritter of the danger that their Mega Train was active or about to move;

h.  Failing to provide or allow for a safe place for pedestrians to cross the stretch of the Mason Street track blocked by their stopped trains and mega trains; this lack of a safe place to cross created a hazardous condition at each of the crossings on the track; the lack of a safe crossing for pedestrians has been repeatedly ignored by management, along with train crews, maintenance crews, and other employees of the Defendants;

i.  Failing to relocate the subject track or switching operations to an area sufficiently outside the center of Fort Collins so as to avoid blocking all public crossings of the

Mason Street track in the Old Town area, including the Mulberry Street Crossing, for extended periods of time;

j.  Failing to keep a proper lookout to ensure that their trains and mega trains were clear of people, including Plaintiff, prior to moving;

k.  Failing to ensure that switching/coupling operations were conducted solely within the confines of their yard by cutting their trains and mega trains to a reasonable length or otherwise ensuring those operations and involved or affected trains remained only in the yard;

l.  Failing to ensure a safe place to cross by not blocking the various crossings on their Mason Street track in the Old Town area of Fort Collins for extended periods of time;

m.  Failing to take actions to prevent their Mega Train from running Ms. Ritter over after seeing Ms. Ritter in a position of peril, or after such time they should have or had reason to know that Ms. Ritter and/or other pedestrians were or could be in a position of peril;

n.  Failing to cut the Mega Train at the Mulberry Street and/or other public crossings to allow for the passage of pedestrians for the duration of time the train was stopped in downtown Fort Collins;

o.  Failing to reduce the size of the train to a length that would not extend out of the Vine Street yard and into the public crossings of Fort Collins;

p.  Causing injury to Plaintiff by running her over repeatedly with the cars of the Mega Train after becoming aware of her presence and position of peril;

q.  Creating a dangerous situation in standing their Mega Train for an extended

duration of time over the Mulberry Street public crossing, giving the outward appearance to Plaintiff and other pedestrians that the train was not going to be moving any time soon, thereby creating a hidden danger in that the train did move suddenly, unexpectedly, and without warning;

r.  Failing to give proper warnings or otherwise take reasonable steps to ensure the safety of pedestrians including Ms. Ritter from such hidden danger;

s.  Impliedly inviting and/or authorizing pedestrians in Fort Collins, including Plaintiff, to be present on and cross their stopped trains and mega trains on the Mason Street tracks including at or near the Mulberry Street crossing by allowing such pedestrian traffic over, through, and under their stopped trains and mega trains at that location for years prior to the subject accident;

t.  Impliedly inviting and/or authorizing pedestrians in Fort Collins, including Plaintiff, to be present on and cross their stopped trains and mega trains on the Mason Street tracks including the Mulberry Street crossing by allowing such pedestrian traffic over, through, and under their stopped trains and mega trains at that location for years prior to the subject accident while failing to take any steps to prevent such pedestrian use or to protect or warn such pedestrians or members of the public against the hidden danger created by their conduct;

u.  Failing to take reasonable steps to deter and prevent pedestrians from crossing the tracks during lengthy stoppages by climbing through, over, and under stopped trains, including but not limited to by erecting fencing, barriers, chains, or similar deterrent measures adjacent to the tracks, posting prominent, detailed, and explanatory warning signage, posting flagmen, watchmen, or other personnel

25

during such stoppages, or providing other means of crossing the tracks at a safe place at such times;

v. Failing to take reasonable steps to end the use of the well-worn pedestrian path across their Mason Street track that they knew had been used by pedestrians to cross over, under, and through their stopped trains and mega trains over a number of years;

w. Failing to take reasonable steps to discourage pedestrians from crossing the Mason Street track by climbing through, over, and under, their stopped trains including at and near the Mulberry Street Crossing;

x. Failing to take reasonable steps to warn pedestrians who crossed the Mason Street track by climbing through, over, and under, their stopped trains including at and near the Mulberry Street Crossing of the danger posed by those trains including the danger that the trains could begin to move suddenly and without audible warning;

y. Failing to take reasonable steps to protect pedestrians who crossed the Mason Street track by climbing through, over, and under their stopped trains, including at and near the Mulberry Street Crossing, from the danger posed by their trains including the danger that the trains could begin to move suddenly and without audible warning;

z. Failing to appropriately instruct, supervise, direct, and monitor their employees, including but not limited to the Train Crew Defendants, to help protect the public from unsafe practices and conditions;

aa. Failing to ensure that their train crews, including the Train Crew Defendants, safely operated and administered their trains and mega trains on their tracks through

downtown Fort Collins, including with respect to the presence of pedestrians on and around the tracks; and

bb. Such other and further acts of negligence as may be revealed in discovery.

119.   The above listed failures and actions constituting negligence on the part of the BNSF Defendants and their agents, employees, and/or contractors were a direct and proximate cause of the injuries to Plaintiff Janeau Ritter described elsewhere herein.

120.   Certain of the BNSF Defendants' acts and omissions, or acts and omissions of the BNSF Defendants' employees, agents, and/or contractors, including but not limited to the Train Crew Defendants, may additionally constitute gross negligence and/or willful and wanton conduct, as further discussed below.

121.   The BNSF Defendants are liable for their own acts of negligence, gross negligence, and willful and wanton conduct, and for acts of negligence, gross negligence, and willful and wanton conduct by their employees, agents, and/or contractors, including but not limited to the Train Crew Defendants.

122.   As a direct and proximate result and consequence of the tortious acts and omissions of the Defendants and/or their employees, agents, and/or contractors described herein, Plaintiff suffered injuries, damages, and losses described in more detail elsewhere herein.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

## COUNT II
## Premises Liability

123.   Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

124.   At all relevant times, the provisions of Colorado's Premises Liability Act, C.R.S. § 13-21-115, were in effect.

125. At all relevant times, the BNSF Defendants were "landowners" of the subject railroad track as that term is defined by statute. *See* C.R.S. § 13-21-115(1).

126. At all relevant times, the BNSF Defendants were legally responsible for the condition of the subject railroad track and for the activities conducted and circumstances existing on the track, which have been described elsewhere herein.

127. At all relevant times, Plaintiff Janeau Ritter was an "invitee" on the subject track as that term is defined by statute. *See* C.R.S. § 13-21-115(5)(a).

128. Alternatively, at all relevant times, Plaintiff Janeau Ritter was a "licensee" on the subject track as that term is defined by statute. *See* C.R.S. § 13-21-115(5)(b).

129. At all relevant times, the BNSF Defendants impliedly represented that the public was expected or intended to enter or remain on its Mason Street track in Old Town Fort Collins by, *inter alia*, frequently stopping trains and mega trains on the track for lengthy periods of time so as to cut off all modes of crossing the tracks other than climbing through, over, or under stopped trains during such periods; taking no steps to deter or prevent such entry and presence on the tracks at such times; taking no steps to warn the public of the dangers and hazards created; and taking no steps to provide the public with alternative means of crossing the tracks at such times; all in order to facilitate BNSF's business operations including but not limited to its practice of running and stopping long trains in order to minimize costs and maximize returns to its shareholders.

130. At all relevant times, Plaintiff Janeau Ritter entered and remained on the BNSF Defendants' tracks in response to Defendants' implied representations in this regard.

131. At all relevant times, the BNSF Defendants owed Plaintiff, Janeau Ritter, a duty of reasonable care to protect against dangers of which they actually knew or should have known; to exercise reasonable care with respect to and to warn of dangers that they created and of which they

actually knew; and to refrain from causing injury by willful or deliberate conduct, including conduct characterized as "gross negligence" and/or "willful and wanton conduct" under applicable law. *See* C.R.S. § 13-21-115(3)(a)-(c), (3.5).

132.   Alternatively, at all relevant times, the BNSF Defendants owed Plaintiff, Janeau Ritter, a duty of reasonable care with respect to and to warn of dangers that they created and of which they actually knew; and to refrain from causing injury by willful or deliberate conduct, including conduct characterized as "gross negligence" and/or "willful and wanton conduct" under applicable law. *See* C.R.S. § 13-21-115(3)(b)-(c), (3.5).

133.   At all relevant times, the BNSF Defendants breached their legal duties described herein, including but not limited to by the following acts and omissions:

a.   Failing to construct a pedestrian foot bridge over their track (or other alternative means) to allow for the safe passage of pedestrians over their tracks;

b.   Failing to properly warn of and address dangers to pedestrians of stopped trains and mega trains over crossings;

c.   Failing to place a flagman or watchman at the Mason Street track, including the Mulberry Street crossing, to warn and advise the public and pedestrians that their Mega Train was waiting for a track warrant, engaging in switching operations, and/or engaged in other operations up the track and would soon be moving;

d.   Failing to ensure the proper operation of the automatic flashing lights and gates on the Mason Street track including at the Mulberry Street crossing;

e.   Failing to place proper warning signage on the Mason Street track including at the Mulberry Street crossing to warn and advise the public and pedestrians that their Mega Train was waiting for a track warrant, engaged in switching operations,

and/or engaged in other operations up the track as it operated over and blocked the east-west arteries on the Mason Street track including the Mulberry Street crossing;

f.   Failing to provide audible warning bells or a wayside horn at the crossing to alert pedestrians as to the danger of a moving train on the Mason Street track including at the Mulberry Street crossing;

g.   Failing to announce to pedestrians at the crossing such as Ms. Ritter of the danger that their Mega Train was active or about to move;

h.   Failing to provide or allow for a safe place for pedestrians to cross the stretch of the Mason Street track blocked by their stopped trains and mega trains; this lack of a safe place to cross created a hazardous condition at each of the crossings on the track; the lack of a safe crossing for pedestrians has been repeatedly ignored by management, along with train crews, maintenance crews, and other employees of the Defendants;

i.   Failing to relocate the subject track or switching operations to an area sufficiently outside the center of Fort Collins so as to avoid blocking all public crossings of the Mason Street track in the Old Town area, including the Mulberry Street Crossing, for extended periods of time;

j.   Failing to keep a proper lookout to ensure that their trains and mega trains were clear of people, including Plaintiff, prior to moving;

k.   Failing to ensure that switching/coupling operations were conducted solely within the confines of their yard by cutting their trains and mega trains to a reasonable length or otherwise ensuring those operations and involved or affected trains remained only in the yard;

l.  Failing to ensure a safe place to cross by not blocking the various crossings on their Mason Street track in the Old Town area of Fort Collins for extended periods of time;

m.  Failing to take actions to prevent their Mega Train from running Ms. Ritter over after seeing Ms. Ritter in a position of peril, or after such time they should have or had reason to know that Ms. Ritter and/or other pedestrians were or could be in a position of peril;

n.  Failing to cut the Mega Train at the Mulberry Street and/or other public crossings to allow for the passage of pedestrians for the duration of time the train was stopped in downtown Fort Collins;

o.  Failing to reduce the size of the train to a length that would not extend out of the Vine Street yard and into the public crossings of Fort Collins;

p.  Causing injury to Plaintiff by running her over repeatedly with the cars of the Mega Train after becoming aware of her presence and position of peril;

q.  Creating a dangerous situation in standing their Mega Train for an extended duration of time over the Mulberry Street public crossing, giving the outward appearance to Plaintiff and other pedestrians that the train was not going to be moving any time soon, thereby creating a hidden danger in that the train did move suddenly, unexpectedly, and without warning;

r.  Failing to give proper warnings or otherwise take reasonable steps to ensure the safety of pedestrians including Ms. Ritter from such hidden danger;

s.  Impliedly inviting and/or authorizing pedestrians in Fort Collins, including Plaintiff, to be present on and cross their stopped trains and mega trains on the

Mason Street tracks including at or near the Mulberry Street crossing by allowing such pedestrian traffic over, through, and under their stopped trains and mega trains at that location for years prior to the subject accident;

t.  Impliedly inviting and/or authorizing pedestrians in Fort Collins, including Plaintiff, to be present on and cross their stopped trains and mega trains on the Mason Street tracks including the Mulberry Street crossing by allowing such pedestrian traffic over, through, and under their stopped trains and mega trains at that location for years prior to the subject accident while failing to take any steps to prevent such pedestrian use or to protect or warn such pedestrians or members of the public against the hidden danger created by their conduct;

u.  Failing to take reasonable steps to deter and prevent pedestrians from crossing the tracks during lengthy stoppages by climbing through, over, and under stopped trains, including but not limited to by erecting fencing, barriers, chains, or similar deterrent measures adjacent to the tracks, posting prominent, detailed, and explanatory warning signage, posting flagmen, watchmen, or other personnel during such stoppages, or providing other means of crossing the tracks at a safe place at such times;

v.  Failing to take reasonable steps to end the use of the well-worn pedestrian path across their Mason Street track that they knew had been used by pedestrians to cross over, under, and through their stopped trains and mega trains over a number of years;

w.  Failing to take reasonable steps to discourage pedestrians from crossing the Mason Street track by climbing through, over, and under, their stopped trains including at

and near the Mulberry Street Crossing;

x.  Failing to take reasonable steps to warn pedestrians who crossed the Mason Street track by climbing through, over, and under, their stopped trains including at and near the Mulberry Street Crossing of the danger posed by those trains including the danger that the trains could begin to move suddenly and without audible warning;

y.  Failing to take reasonable steps to protect pedestrians who crossed the Mason Street track by climbing through, over, and under their stopped trains, including at and near the Mulberry Street Crossing, from the danger posed by their trains including the danger that the trains could begin to move suddenly and without audible warning;

z.  Failing to appropriately instruct, supervise, direct, and monitor their employees, including but not limited to the Train Crew Defendants, to help protect the public from unsafe practices and conditions;

aa. Failing to ensure that their train crews, including the Train Crew Defendants, safely operated and administered their trains and mega trains on their tracks through downtown Fort Collins, including with respect to the presence of pedestrians on and around the tracks; and

bb. Such other and further acts and omissions reflecting violations of the BNSF Defendants' statutory duties of care as may be revealed in discovery.

134.  As a direct and proximate result and consequence of the tortious acts and omissions of the Defendants described herein, Plaintiff suffered injuries, damages, and losses described in more detail elsewhere herein.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

## COUNTS AGAINST THE TRAIN CREW DEFENDANTS

### COUNT III
### Negligence

135.   Plaintiffs incorporate all other allegations in this complaint as if set forth herein.

136.   At all relevant times, the Train Crew Defendants owed a duty to exercise reasonable care in their operation and running of trains and mega trains on BNSF's railroad tracks through Fort Collins, Colorado, including the subject Mega Train on the Mason Street track through the Old Town area.

137.   At all relevant times, the Train Crew Defendants' duty in this regard extended to persons who crossed the BNSF Defendants' trains, mega trains, and tracks on foot, persons who had implicit invitation and/or permission to cross the BNSF Defendants' trains, mega trains, and tracks on foot, and persons who the Defendants knew or should have known were present on and around their trains, mega trains, and tracks, including by providing to the public and pedestrians appropriate warning, protection, and a safe place to cross their tracks so as to avoid needlessly endangering members of the public, including Plaintiff.

138.   At all relevant times, the Train Crew Defendants breached their duty and were negligent, including by the following:

    a.   Failing to properly warn of and address dangers to pedestrians of stopped trains and mega trains over crossings;

    b.   Failing to place a flagman or watchman at the Mulberry Street crossing to warn and

advise the public and pedestrians that their Mega Train was waiting for a track warrant, engaging in switching operations in the Vine Street yard, and/or engaged in other operations up the track and would be moving;

c.   Failing to provide audible warning bells or a wayside horn at the crossing to alert pedestrians as to the danger of a moving train at the Mulberry Street crossing;

d.   Failing to announce to pedestrians such as Ms. Ritter at the crossing of the danger that their Mega Train was active or about to move;

e.   Failing to keep a proper lookout to ensure that the BNSF Defendants' trains, mega trains, and tracks were clear of people, including Plaintiff, prior to moving;

f.   Failing to ensure that switching/coupling operations take place solely within the confines of the BNSF Defendants' yard by cutting the train to a reasonable length or otherwise ensuring it remain only in the yard;

g.   Failing to ensure a safe place to cross by not blocking the various crossings in Fort Collins;

h.   Failing to take actions to prevent their Mega Train from running Ms. Ritter over after seeing Ms. Ritter in a position of peril, or after such time they should have or had reason to know that Ms. Ritter and/or other pedestrians were in a position of peril;

i.   Failing to cut the Mega Train at the Mulberry Street and/or other public crossings to allow for the passage of pedestrians for the duration of time the train was stopped in downtown Fort Collins;

j.   Failing to reduce the size of the train to a length that would not extend out of the Vine Street yard and into the public crossings of Fort Collins;

k.  Causing injury to Plaintiff by running her over repeatedly with the cars of the Mega Train after becoming aware of her presence and position of peril;

l.  Creating a dangerous situation in standing their Mega Train for an extended duration of time over the Mulberry Street public crossing, giving the outward appearance to Plaintiff that the train was not going to be moving any time soon, thereby creating a hidden danger in that the train did move suddenly, unexpectedly, and without warning; and failing to give proper warnings or otherwise take reasonable steps to ensure the safety of pedestrians including Ms. Ritter from such hidden danger;

m.  Failing to take appropriate steps to warn and protect pedestrians in the area, including Plaintiff, whom they knew or should have known would use the well-worn pedestrian path across their Mason Street track that they knew had been used by pedestrians to cross over, under, and through their stopped trains and mega trains over a number of years;

n.  Failing to take appropriate steps to warn and protect pedestrians in the area, including Plaintiff, whom they knew or should have known were actually using the well-worn pedestrian path across their Mason Street track by crossing over, under, and/or through the stopped mega trains on the date of the subject incident;

o.  Failing to appropriately abide by and follow instruction, supervision, direction, and/or monitoring provided by the BNSF Defendants to help protect the public from unsafe practices and conditions;

p.  Failing to take reasonable steps to prevent pedestrians from crossing the tracks by climbing through, over, and under stopped trains during lengthy stoppages;

q.   Failing to safely operate and administer trains and mega trains on their tracks through downtown Fort Collins, including with respect to the presence of pedestrians on and around the tracks; and

r.   Such other and further acts of negligence as may be revealed in discovery.

139.   The above listed failures and actions constituting negligence on the part of the Train Crew Defendants were a direct and proximate cause of the injuries to Plaintiff Janeau Ritter described elsewhere herein.

140.   Certain of the Train Crew Defendants' acts and omissions may additionally constitute gross negligence and/or willful and wanton conduct, as further discussed below.

141.   As a direct and proximate result and consequence of the tortious acts and omissions of the Train Crew Defendants described herein, Plaintiff suffered injuries, damages, and losses described in more detail elsewhere herein.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

### COUNT IV
### Premises Liability

142.   Plaintiff incorporates all other allegations in this complaint as if set forth herein.

143.   At all relevant times, the Train Crew Defendants were also "landowners" of the subject railroad track as that term is defined by statute. *See* C.R.S. § 13-21-115(1).

144.   At all relevant times, the Train Crew Defendants were legally responsible for the condition of the subject railroad track and for the activities conducted and circumstances existing on the track, which have been described elsewhere herein.

145.   At all relevant times, Plaintiff Janeau Ritter was an "invitee" on the subject track as that term is defined by statute and as described elsewhere herein. *See* C.R.S. § 13-21-115(5)(a).

146.   Alternatively, at all relevant times, Plaintiff Janeau Ritter was a "licensee" on the subject track as that term is defined by statute. *See* C.R.S. § 13-21-115(5)(b).

147.   At all relevant times, the Train Crew Defendants owed Plaintiff, Janeau Ritter, a duty of reasonable care to protect against dangers of which they actually knew or should have known; to warn of dangers that they created and of which they actually knew; and to refrain from causing injury by willful or deliberate conduct, including conduct characterized as "gross negligence" and/or "willful and wanton conduct" under applicable law. *See* C.R.S. § 13-21-115(3)(a)-(c), (3.5).

148.   Alternatively, at all relevant times, the Train Crew Defendants owed Plaintiff, Janeau Ritter, a duty of reasonable care with respect to and to warn of dangers that they created and of which they actually knew; and to refrain from causing injury by willful or deliberate conduct, including conduct characterized as "gross negligence" and/or "willful and wanton conduct" under applicable law. *See* C.R.S. § 13-21-115(3)(b)-(c), (3.5).

149.   At all relevant times, the BNSF Defendants breached their legal duties described herein, including but not limited to by the following acts and omissions:

   a.   Failing to properly warn of and address dangers to pedestrians of stopped trains and mega trains over crossings;

   b.   Failing to place a flagman or watchman at the Mulberry Street crossing to warn and advise the public and pedestrians that their Mega Train was waiting for a track warrant, engaging in switching operations in the Vine Street yard, and/or engaged in other operations up the track and would be moving;

   c.   Failing to provide audible warning bells or a wayside horn at the crossing to alert pedestrians as to the danger of a moving train at the Mulberry Street crossing;

d.   Failing to announce to pedestrians such as Ms. Ritter at the crossing of the danger that their Mega Train was active or about to move;

e.   Failing to keep a proper lookout to ensure that the BNSF Defendants' trains, mega trains, and tracks were clear of people, including Plaintiff, prior to moving;

f.   Failing to ensure that switching/coupling operations take place solely within the confines of the BNSF Defendants' yard by cutting the train to a reasonable length or otherwise ensuring it remain only in the yard;

g.   Failing to ensure a safe place to cross by not blocking the various crossings in Fort Collins;

h.   Failing to take actions to prevent their Mega Train from running Ms. Ritter over after seeing Ms. Ritter in a position of peril, or after such time they should have or had reason to know that Ms. Ritter and/or other pedestrians were in a position of peril;

i.   Failing to cut the Mega Train at the Mulberry Street and/or other public crossings to allow for the passage of pedestrians for the duration of time the train was stopped in downtown Fort Collins;

j.   Failing to reduce the size of the train to a length that would not extend out of the Vine Street yard and into the public crossings of Fort Collins;

k.   Causing injury to Plaintiff by running her over repeatedly with the cars of the Mega Train after becoming aware of her presence and position of peril;

l.   Creating a dangerous situation in standing their Mega Train for an extended duration of time over the Mulberry Street public crossing, giving the outward appearance to Plaintiff that the train was not going to be moving any time soon,

thereby creating a hidden danger in that the train did move suddenly, unexpectedly, and without warning; and failing to give proper warnings or otherwise take reasonable steps to ensure the safety of pedestrians including Ms. Ritter from such hidden danger;

m.  Failing to take appropriate steps to warn and protect pedestrians in the area, including Plaintiff, whom they knew or should have known would use the well-worn pedestrian path across their Mason Street track that they knew had been used by pedestrians to cross over, under, and through their stopped trains and mega trains over a number of years;

n.  Failing to take appropriate steps to warn and protect pedestrians in the area, including Plaintiff, whom they knew or should have known were actually using the well-worn pedestrian path across their Mason Street track by crossing over, under, and/or through the stopped mega trains on the date of the subject incident;

o.  Failing to appropriately abide by and follow instruction, supervision, direction, and/or monitoring provided by the BNSF Defendants to help protect the public from unsafe practices and conditions;

p.  Failing to take reasonable steps to prevent pedestrians from crossing the tracks by climbing through, over, and under stopped trains during lengthy stoppages;

q.  Failing to safely operate and administer trains and mega trains on their tracks through downtown Fort Collins, including with respect to the presence of pedestrians on and around the tracks; and

r.  Such other and further acts and omissions reflecting violations of the BNSF Defendants' statutory duties of care as may be revealed in discovery.

150.   As a direct and proximate result and consequence of the tortious acts and omissions of the Defendants described herein, Plaintiff suffered injuries, damages, and losses described in more detail elsewhere herein.

## COUNTS AGAINST ALL DEFENDANTS

### COUNT V
### Gross Negligence

151.   Plaintiff incorporates all other allegations in this complaint as if set forth herein.

152.   In engaging in one or more of the acts and omissions set forth herein causing Plaintiff's injuries, the BNSF Defendants and the Train Crew Defendants acted willfully, wantonly, and recklessly, without regard for the consequences or the rights and safety of Plaintiff.

153.   As such, the BNSF Defendants and the Train Crew Defendants were grossly negligent, and that gross negligence was a cause of Plaintiff's injuries.

154.   The BNSF Defendants' and the Train Crew Defendants' acts and omissions constituting gross negligence include but are not limited to the acts and omissions set forth elsewhere herein.

155.   The BNSF Defendants' and the Train Crew Defendants' acts and omissions constituting gross negligence include but are not limited to the following:

a.   Operating the subject Mega Train on the Mason Street track in an unreasonably dangerous and reckless manner in view of the presence of pedestrians on and around the track and in view of their prior knowledge of the presence of pedestrians on and around the track and their implied invitation for pedestrians to cross the track by climbing through, over, and under stopped trains and mega trains during

lengthy stoppages;

b.  Disregarding the safety and well-being of pedestrians whom they knew or should have known were present or were likely to be present in the immediate vicinity of their track and trains during lengthy stoppages, including a lengthy stoppage of the subject Mega Train on the Mason Street track, and who they knew or should have known were crossing or were likely to be crossing the tracks during such stoppages by climbing through, over, and under such trains including the subject Mega Train at such place and such time;

c.  Suddenly and abruptly moving the subject Mega Train without warning after a lengthy stoppage of the train on the Mason Street track in Old Town Fort Collins, under conditions where pedestrians were substantially likely to be crossing the track by climbing through, over, and under the train at the time they began to move it, and where their failure to provide any warning prior to moving the train was substantially likely to result in serious injury or death to such pedestrians;

d.  Failing to warn pedestrians in the immediate vicinity of the Mason Street track and the subject Mega Train of the dangers and hazards present during lengthy stoppages of the train on their track, including due to sudden and unexpected movement of the train after a lengthy stoppage and associated dangers of serious injury or death from such sudden movements;

e.  Impliedly inviting and authorizing pedestrians onto the Mason Street track and to climb through, over, and under stopped trains in order to cross their track during lengthy stoppages by taking no steps to prevent pedestrians from crossing the track at such times by climbing through, over, and under stopped trains, with actual

knowledge that pedestrians were doing so, and with actual knowledge that no audible warnings or other notice would be provided to pedestrians on and around the stopped trains when they began to move;

f.  Failing to provide any safe means for pedestrians to cross the Mason Street track in Old Town Fort Collins during lengthy stoppages of trains and mega trains on the track, despite knowing that their operations were forcing pedestrians to cross the track by climbing through, over, and under stopped trains and creating substantial likelihood of serious injury or death for such pedestrians;

g.  Failing to take appropriate steps to warn and protect pedestrians whom they knew were using the well-worn path across the Mason Street track to cross over, under, and/or through their stopped mega train on the date of the subject incident, with knowledge that their failure to take such steps was substantially like to result in injury to such individuals, so as to willfully disregard the rights and safety of such individuals, including the Plaintiff, Janeau Ritter; and

h.  Such other and further acts and omissions constituting gross negligence as may be revealed in discovery.

156.  Defendants' gross negligence was a proximate cause of Plaintiff's injuries and damages described elsewhere herein.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants in an amount to be determined at trial and for such other and further relief as the Court deems just and proper.

## COUNT VI
## CAUSATION & DAMAGES

157.   Plaintiff incorporates all other allegations in this complaint as if set forth herein.

158.   As a direct and proximate result of the negligent and unlawful conduct of the Defendants as described herein, Plaintiff, Janeau Ritter, has incurred, will in the future incur, and seeks recovery of the following general and special damages:

    a.   Pain and suffering, mental anguish, and emotional distress, past and future;

    b.   Reasonable and necessary medical, hospital, and rehabilitation care and services, nursing care and services, medication, therapy, and other expenses, past and future;

    c.   Inconvenience;

    d.   Loss of enjoyment of life and/or impairment of the quality of life;

    e.   Loss of earnings and earning capacity;

    f.   Physical impairment;

    g.   Disfigurement and scarring; and

    h.   Any other losses and damages sustained by Plaintiff and to which she is legally entitled either pursuant to statute or the common law.

159.   Plaintiff further reserves right to amend her to seek an award of exemplary damages against the Defendants in an amount to be determined by the trier of fact according to applicable law.[1]

---

[1] Plaintiff is precluded from asserting a claim for exemplary damages "in any initial claim for relief." C.R.S. § 13-21-102(1.5)(a). Plaintiff hereby reserves right to seek amendment of her Complaint to assert a claim for exemplary damages against the Defendants based on prima facie proof of a triable issue after the exchange of initial disclosures as provided by Colorado statute.

**WHEREFORE,** Plaintiffs, Janeau Ritter, by and through her duly appointed conservator and guardian, Sean McKendrick, pray for and demand an award of damages to be fixed by the trier of fact in a reasonable amount. Additionally, Plaintiffs ask for the costs of this action, reasonable attorney fees, all pre-judgment and post-judgment interest as provided by law, and for all such other relief to which they are or may be legally entitled and as the Court deems appropriate.

### PLAINTIFFS DEMAND A TRIAL BY JURY.

Dated this 11th day of November, 2021.

Respectfully submitted,

By:     s/ *J. Todd Tenge*
        J. Todd Tenge (No. 22088)
        Tenge Law Firm, LLC
        2120 Milestone Drive, Suite 104
        Fort Collins, CO 80525
        Ph:  (970) 528-5173
        Fax: (303) 665-8788
        Email  jttenge@tengelaw.com

        s/ *Paul J. Komyatte*
        s/ *David P. Mason*
        Paul J. Komyatte #22750
        David P. Mason #41333
        The Komyatte Law Firm LLC
        1536 Cole Blvd., Bldg. 4, Suite 300
        Lakewood, CO 80401
        Phone No. (720) 975-8553
        Fax No. (720) 528-8072
        Email  paul@komyattelawfirm.com
        Email  dave@komyattelawfirm.com

        **ATTORNEYS FOR PLAINTIFFS**

Plaintiff's Address:
1000 E. Stuart Street
Fort Collins, CO. 80525